Good morning. May it please the court. Mr. Handley challenges the search of his vehicle based upon a canine indication for drugs after a trespass. The district court was correct in finding that the search violated Mr. Handley's Fourth Amendment rights. However, the court erred in refusing to apply the exclusionary rule because Eighth Circuit precedent did not clearly authorize a dog to enter a vehicle during an open air sniff. I plan to start with the legality of the search since the prosecution has raised that, but I'm happy to address any of the legal bases raised in the briefs. The first issue, the prosecution argues that the district court erred in finding that the canine's actions were an unlawful search. I don't think there's any dispute that generally dogs cannot be in cars absent probable cause. I think that's discussed in Pulido, that's consistent with trespass law. Where I think the parties disagree is the government is saying if the officer doesn't actually direct the dog into the car, then there's no Fourth Amendment. The Fourth Amendment doesn't apply to those circumstances. This is based on Lyon, and I struggle with treating the facts of this case like Lyon and applying it here. Because in Lyon, you had testimony. First off, the argument, as Judge Calton's opinion in Pulido talks about, was they created the opportunity and that was the problem. But in Lyon, the officer admitted, I know the dog was not supposed to be in there, and it was an instinctive action. Here, what we have is the officer saying, my dog did this all the time. I knew they did it during training. I knew they did it when they were on the scene. I did absolutely nothing to stop or discourage the behavior. So essentially saying, we're going to take, and this probably bleeds a little bit into the good faith exception, but we're going to take this single statement from Lyon, which has already been called into question, but we're going to take this to say so long as we aren't actively encouraging at the time by a direction, we can just let our dogs do whatever they want. Which I don't think is what Lyon is saying. It's definitely not what Pulido is saying. So I don't, whether you're looking at it, whether there's a search violation, whether you're looking at it, whether it's good faith, it just does not fit. It's kind of square peg round hole. I was going to maybe ask this of the government as well, but it's my understanding that Laura, the drug dog, was trained to go to the strongest source of the scent of marijuana. Yes. And isn't that exactly what she did when she stuck her nose through the door so that she was closer to the console? Potentially. The question is, how can that be an instinctive action if she was trained to do that? That's potentially a failure of training in this case, and I think the magistrate court in this- In what way? That you would train the dog not to enter the car? You should, absolutely. I mean, when we have case law that says that law enforcement officers, drug dogs cannot be going in the car absent probable cause, you should be training the dog to not go into the car. So, I mean, there's not evidence in this record about whether it's possible to train a dog not to stick its nose past where the glass would be. Is there, I mean- There's no definitive statement. I would, my position is it would be ridiculous to say that you can't train a dog who is so intelligent, they're supposed to specifically train on what to do, what to sniff for, to say you can't train them to not breach a car. I mean, my dogs are not bright, and I can train them not to jump on people. I think the same could probably be assumed for canine dogs. So, no. But there's no expert testimony on that fact either way. But here we have the dog routinely did so. Yes. There's testimony in the transcript that this dog did this during training and also on the street, and the handler acknowledged I didn't stop it. I didn't train him against it or train her against it. I allowed the behavior. So you referenced this earlier. How does that take this potentially from your view out of the Davis analysis? So I think that it's troubling because Davis' principle is that we're not going to exclude evidence when officers are following the law. They're doing what they're supposed to do. It's just that the law changes. And more often plays into circumstances where case laws overrule, like pre-Rodriguez when you could extend a stop for a canine sniff. And there, the officers are doing what they're supposed to do. So what is there to deter? Here they're not really doing what they're supposed to do. I mean, it'd be different if the circuit's case law said dogs can go in cars no matter what. What they had said is we acknowledge they're not supposed to be in there if you're just looking at lions, of course. We acknowledge they're not supposed to be in there. So, but if it's an instinctive act, you know, we're not going to hold them liable for that. The Fourth Amendment doesn't apply. So then it almost creates what seems like a willful blindness type situation here, which is why it takes it outside the Davis. Like officers can't say, I knew this was happening. Eighth Circuit case law says it's not supposed to be happening, but I didn't point the dog or I didn't pull their leash to get them in the car, so it's fine. They're not really doing the right thing like we have in other cases that have said Davis applies and we shouldn't apply the exclusionary rule. Well, in Davis' main sentence, it says evidence obtained during a search conducted in reasonable reliance. So you worded it differently, but you think the issue here is whether there's reasonable reliance on lions that we've quoted several times and even in recent opinions. Yes, and it's not reasonable reliance for the reasons I've discussed and also because the law is not clearly established. Are you making dog handlers and dog trainers into law professors? Do you risk that? Dogs, as it's said in PLETO, they're instruments of law enforcement. They act like law enforcement. We expect law enforcement officers to know Fourth Amendment law and follow it, and the same thing should apply here, especially when we know the handler knew this behavior was occurring and did nothing to prevent it or stop it. But it also wasn't clear with the extent that we've seen generally in other cases applying this day of its exception. Yeah, I'd like you to expand on that because the Ninth Circuit in U.S. v. Lara, same name as the dog, said that you don't apply Davis where the law is unclear, only where there's clearly binding precedent. So what about the Eighth Circuit? In the Eighth Circuit, it was unclear. We have that lion case, which again, it's a single line that really didn't go to the heart of the matter of what was happening in that case anyway. But most importantly, we have the PLETO case, which there, the opinion talks about the district court treated intent as dispositive. And the court there was like, that's probably not true anymore after Ashcroft because we don't look to subjective intent. It's an objective analysis. So I think after PLETO, which occurred before this traffic stop, it's not clearly established law. And I think when you combine that with this kind of expansion of trespass Fourth Amendment jurisprudence that's been happening post-Jones and Hardina, where the focus is really on property rights, it's really on location in a way that you didn't necessarily have with the CATS reasonable expectation of privacy. I think that only bolsters that it's really, it is unsettled. So I mean, I guess I would tend to agree that after PLETO and Jardines or Hardinas, that the law has changed. And lion's probably not good anymore, but how can we expect an officer to know that? I think that we expect all officers to know the law. And if we have... It's kind of in a state of cloudiness, isn't it? And I think if we were talking about qualified immunity, it'd be much different. And that's what the Laura decision of the Ninth Circuit was talking about. We're not going to find someone financially liable because of maybe this uncertainty. But what we will do is we will exclude evidence when there's a Fourth Amendment violation in a criminal investigation. So I think would it rise to the level of being subject to a civil suit? No. But if it is unclear, you can't say, I mean, I don't know if the officers are so aware of it. Well, there's a 2007 opinion lines and there's a single line that allows me to do this if I'm not directing them. But to be aware of what they can and cannot do. And it's especially problematic here when the officer knew that the dog was doing it and just allowed the behavior to continue. But I would note there's problems with that as well of saying it's unclear why it hold the officers to that. If that's accepted, and that was an argument in Davis at the Supreme Court, like what's going to happen to Fourth Amendment jurisprudence? It's just going to be at a standstill because we're not going to decide these issues in qualified immunity. It has to be clearly established. We decide our Fourth Amendment protections in cases like these. So if it's not, but Davis said, well, that's why we're only applying it to cases where the law is clear and we're coming back and it's being reversed and it's really slightly just overruling. Here, if this is accepted, while it's kind of unclear, we acknowledge Pulido, but it's not fair to hold that against the officers, then the circuit's Fourth Amendment jurisprudence is essentially at a standstill. Because unless it is clearly established or direct, it will always be some type of good faith or Davis exception to the exclusionary rule. And that's troubling. And I would note, it's interesting to see how this develops in a similar circumstance. In the Perez case, dealing with curtilage outside of an apartment, there the court didn't apply the exclusionary rule because, sure, there had been jardines, but the court had not explicitly overruled it pertinent to apartments. And then there's been another case which said, OK, yes, this is maybe a potentially good argument, but we haven't explicitly overruled when it comes to apartments under jardines. So if this isn't excluded and the court just continues to say, yes, it might not be good law under Ashcroft, but that's not enough to put officers on notice, then any time this happens, we're just going to continue to have cases where the court says, maybe, maybe this is wrong, maybe this is no longer good law under Supreme Court precedent, but we're not going to apply the exclusionary rule. And the Fourth Amendment case law will stand as it is. I'm eating into my rebuttal time, so if there are no immediate questions, I reserve the remainder. You certainly may. Mr. Lammers. Good morning, Your Honors. Jack Lammers for the United States. And may it please the Court. I want to address one of the issues, I think, that Judge Grass raised. We don't expect law enforcement officers to be law professors. The fact that we are here having this discussion about, I guess, one of the claims raised by defense counsel is, well, Lyons actually wasn't really a holding. Lyons is actually dicta. So first of all, we're now going to expect law enforcement officers to realize whether a case is dicta or the case is actual holding. Then we're expecting law enforcement officers to say, well, the case hasn't actually been overruled yet. And in fact, Lyons is still good law. But we've had a district, or not even a district court case, we've had Eighth Circuit cases that have said, I'm not sure about that holding anymore. We don't know yet. We don't have to decide that yet, because we're going to decide the plea on other grounds. We're going to decide that probable cause existed at the time that the dog actually sniffed. So we don't have to address Lyons. But we're going to expect law enforcement officers to say, boy, I better change the behavior of how I train my dog. I better train out those instinctive behaviors of the dog. Again, as you stated, sir, going to the strongest odor of the scent. And we're going to have to then change the behavior of our entire department. So that's not the way that good faith works. And we can't... Yes, sir? About the other side of the coin, can you have clearly binding precedent for purpose of the Davis exception if it's contrary to U.S. Supreme Court precedent? Well, I'm not sure it is contrary to U.S. Supreme Court precedent. I think that's the point here, is that we don't have any clear guidance yet that says it is, in fact, contrary to Supreme Court precedent. I think Lyons is still good law. Lyons still actually holds up. There's a trespass... If the search was a violation of the Fourth Amendment in Jardines or Hardiness, why would it not be here? Because that really went more to the officers. The officers were putting the dog in place to do what the dog... They're putting the dog on the porch. I can't remember if it's Jardines or Jones, but the one was the tracker where the officers put the tracker underneath the car. And the court said, no, that's a trespass. You're intentionally getting in there and you're intentionally occupying that space. And with the dog, you're intentionally going on the porch and you're occupying the curtilage. But isn't there evidence, and correct me, maybe not, that this dog had a habit of doing this? And doesn't that change things? I think habit's too strong. I think that's too strong of a characterization in this case. I think the testimony is at the motion to suppress, and the transcript obviously controls. I'm going from my recollection. I think it is, well, has the dog done this before? And I think the answer is something like, yes, he has. And I think the questioning was more along the lines of, you don't train the dog not to do that. And I think the answer is they didn't. But I don't think there's... Where you know a dog is doing this, doesn't that take it? I mean, again, we're arguing about what police officers and law professors shouldn't understand. And I think that's exactly the point. We're arguing about, we're trying to say that law or that police officers, or excuse me, defense is trying to say that law professor or police officers have the sophistication on these legal technicalities. But Davis kind of says, we're going to let law, police officers read cases and go with their guts on what it means, right? I mean, how is the law going to change per your colleague's question here, if we rely on Davis? Well, I think potentially the way the law changes is the court goes en banc and the court says, this is no longer good law. And once it's no longer good law, then we have a clear statement for law enforcement to say, okay, you need to change this. That's not where we are. That's not what we have in this particular case. And I don't think it takes it out of lines because... When would we have the opportunity to go en banc if we decide this case based on Davis? I mean, to her point. Right. Yeah. Realistically, I don't know how you get there. At some point, there's a case that enough of the judges in the circuit say, this is one we want to take another look at. We're not there. We're simply not. And we can't expect law enforcement officers to be sophisticated enough to say, boy, it's possible that this law may change based on a line that actually is probably dicta in paleto, where they actually say, we don't have to decide it. We think it's called into question. Maybe Lyons is called into question. But we don't have to decide that right now because we can decide it on other grounds. I think it's way, way too difficult to expect a law enforcement officer to anticipate that sometime down the road, the Eighth Circuit might change the standards of training or require that dogs not follow their instinctive behavior and intentionally go to the strongest scent of the drugs. Let me ask you about the instinctive actions exception. It's my understanding that this dog was trained to go to the location of the strongest scent of marijuana. Isn't that what it did? So how could it be instinctive if it was trained to do that? So I think there's a distinction, Your Honor, between the instinctive behavior of the dog, like the physical behavior and- Sticking its head through the window. Well, I think training the dog to the scent, that's trained. And they're not even necessarily trained- Let me ask it this way. Do untrained dogs go around sticking their heads through windows looking for narcotics? I think untrained dogs go around sticking their heads in windows routinely. Looking for the source of marijuana. Looking for- My point is, they're trained to do this. So how could it be instinctive action for purpose of an instinctive action exception? So he's trained for specific odors. That's certainly true. But the instinctive reaction of a dog, I think, is the jumping up is really what we're relying on here, what we're talking about here. But you can't train a dog to alert in certain ways, correct? I mean- They train a dog to indicate in certain ways, yes. And I think that's a specific difference that we have to focus on. So this dog, it was trained to sit or lie down, to indicate. Alerting is a different animal. Alerting is the dog is signaling to the owner or to the handler, we're in the scent. We're here now, we're in the scent. And that gets us into Holloman and says, the alerts are enough. So let's even say that, and I would not concede this, let's even say that Lyons has been called into question so much so that this was an illegal search. And again, I don't concede that it was. I think it was legitimate based on the case law that's existent within this circuit right now. But even if it was, I think there is a very good argument that there's probable cause that existed before the dog's nose breached the plane of the search. Let me ask you about that. The district court said it's strange credulity that Laura's untrained alerts were a substitute for a trained indication. Is that a finding of fact subject to clear error review? Or what is that? I believe that is a statement of the, I don't think it's a finding of fact. I think it's disagreement with the law. And I don't think it's subject to clear error review, it's subject to de novo review. So, and I want to go back, I guess, sort of to answer that question. I don't think there's really a significant difference in the facts in this particular case. The magistrate court credited Officer Smith, credited his observations. He said, I saw, I have no reason to doubt that he observed these behaviors. But even the officer testified that he did not believe there was probable cause. Well, but the officer... So did the district court. And we're right back into the sort of law professor analogy again. We don't expect the officer to be the law professor, right? We expect him to know, when did my dog's behavior change? When did that happen? And he said, my dog's behavior changed four different times. Have we ever, is there any precedent for finding an alert as opposed to an indication to be enough for probable cause where both the dog handler and the district court found that there was no probable cause? I don't know of any. I know that there... Do you know the basis in Holloman? Yes. Holloman gets that conclusion. Do you know what the district court thought and what the police officer thought in Holloman? I don't know what the transcript said. Obviously, I've read the opinion. I didn't read the motion to suppress transcript in Holloman, Your Honor. I would say that we actually have stronger grounds that there's probable cause than the other cases cited. So the district court said here, I saw the alerts. The expert called by defendant says, I saw the alerts. The magistrate court said, I saw the alerts. So there's really not a significant factual distinction. Where the distinction comes is there's a legal question or a legal dispute. And the district court looked at it and said, no, this is different than Holloman because there were, I think the phrase was distinctive, two distinctive alerts in Holloman and these don't rise to that level. And I would just posit to the court, I think the district court was just mistaken in regards to that. So there were the distinctive alerts in Holloman where the dog stopped twice and then continued on with his searching. In Polito, the dog pulled aggressively on the leash and then sniffed. In Thin Elk, the case that was just recently decided, the dog actually, I think, pulled aggressively, sniffed through his nose, and maybe sniffed along a seam. We have all four of those behaviors in this particular case. In Thin Elk, there were a lot of other components of the totality of the circumstances. There were other components. That's absolutely right. And in the other cases, there were some as well. But in this case, we have four distinctive alerts. And I'm sure Your Honors have watched the video. You can see very clearly, the dog's behavior changes very, very clearly. The dog rushes, pulls aggressively at the leash as soon as the officer says, sook, which is the indication to search for drugs. The dog rushes to the car. The dog goes to the front of the car, quickly snaps back, changes behavior to go back the other way, sniffs along the seam, and then leaps up, turns to the left, and goes toward the window. All four of those behaviors are alerts. And under Thin Elk and under Holloman, those alerts by themselves say, that's enough. You have probable cause. We're there. It appears the court was a little bit troubled by the shortness of this. I would posit that that's actually a benefit. The dog got on the scent right away, immediately. If the dog had meandered around that car for two minutes and sort of lackadaisically sniffed and sniffed and sniffed and didn't really change his behaviors, I could understand maybe saying, oh boy, we don't know here. That's not what we have. We have a dog that got on the scent right away, rushed in, alerted four times, and then, in fact, did exactly what the training was, sat down after. So I believe there is, number one, on the first issue, Lyons is still good law. Number two, there's probable cause before the dog's nose goes into the window. And number three, there's good faith, simply because the officers were relying on existing precedent within this circuit. And absent any further questions, that's all. Thank you. Thank you for the argument, counsel. Ms. Quick. I'll start with the question of clear error in the standard of review. This is a factual finding or an assessment of the facts. In Holloman, the district court credited the canine handler. And in Thin Elk, the district court credited the canine handler over the defense expert. And this court said, that's not clear error. And that's what we're asking the court to do here, is that the district court is reviewing this evidence in the first instance, reviewing the testimony. And here, the judges were incredibly clear in their written orders, saying, we're not saying that pre-indication behavior can never establish probable cause. They acknowledged this court's precedent on that. They acknowledged that was the law. They were clear that it was just simply fact-specific to this case. And I'm sure the court has observed the videos. It's five seconds. It's five to six seconds where we're seeing a dog run up, run back, and hop into a window. And in the other cases where this court has found no clear error where pre-indication behavior supported probable cause, both in the Holloman case, in Pulido, there's discussions of very distinct actions by the dog. There's also outside facts that would support a finding of probable cause independent of the canine's actions. And here, the district court said, based off of the canine handler's testimony, based off the expert testimony, I'm just not buying it that it's enough under the specific facts of the case, based off of the evidence that's been presented to me. And I would note, turning to the discussion of, we can't expect officers to know this. Yes, we can. Because even in the Lyon case that they're citing that allows them to do that, the officer said, and this court said, I know the dog's not supposed to be in there. So to say, how do we expect, how can we expect law enforcement officers to know dogs cannot go inside of a car absent probable cause? The very case they're citing that says they can do it, says that they're not supposed to be in there. So I don't think this is just asking officers to make very complicated legal analysis at the scene. This is just very straightforward. Don't let a dog go into a car absent probable cause. The whole idea is that there's no violation of reasonable expectation of privacy because they're outside the vehicle doing a sniff on the exterior. And kind of backtracking again to whether Lyons is good law. I mean, it's not. Lyons is no longer good law based upon Supreme Court precedent. The Ashcroft case, which again the court discusses in the Pulido case, shows that this idea of intent is irrelevant when we're looking at Fourth Amendment violations. And we also have Jardines, which shows that there's this trespass entering into a protected space. So to say when not only you have a Supreme Court case that calls it to a question, but then an Eighth Circuit decision acknowledging, yeah, this is probably no longer good because of this Supreme Court case that's called it into question, to say that you can never apply the exclusionary rule under those circumstances, then I'm not sure when you will, if there's technologies. I just, I think when you have especially, it might be a different situation if you didn't have Pulido, but when you have that indicating should be on notice, the exclusionary rule should apply. So if there are no further questions, I would ask this court to reverse the finding that the exclusionary rule did not apply and order the evidence suppressed. Thank you. Thank you both for the argument. Case 24-2976 is submitted for decision by the court.